Opinion Issued October 7, 2004
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00763-CR




RONALD D. GOSSER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 944953




MEMORANDUM OPINION
          The State charged appellant, Ronald D. Gosser, by indictment with the felony
offense of possession of cocaine, a controlled substance, with intent to deliver.


 
Gosser moved to suppress the cocaine and, after considering evidence, the trial court
denied the motion. Gosser then pleaded not guilty to the charged offense. A jury
convicted Gosser and assessed punishment at twenty-five years’ confinement. Gosser
contends that the trial court erred in denying his motion to suppress because: (1) the
police failed to arrest him immediately upon witnessing his commission of a traffic
offense; (2) he did not commit the traffic offense within the presence of the arresting
officer; and (3) his arrest is unreasonable under the Texas Constitution because
“police officers should not be authorized to conduct full custodial arrests of Texas
citizens based purely on trivial traffic offenses.” We affirm.
Background



          In November 2002, members of a federal drug task force consisting of state and
federal law enforcement officers patrolled the area near Fondren and Richmond
streets in Houston. The task force searched for a white male traveling in a black
Silverado pickup truck in response to an informant’s tip to them that a black
Silverado pickup would transport a large amount of cocaine in that area. Officer
Tomlinson of the Houston Police Department (“HPD”) and Special Agent Rudy
Ortega of the Federal Bureau of Investigation (“FBI”) patrolled the area in separate
undercover vehicles. Around dusk, they located a pickup truck matching the
informant’s description traveling on Fondren and followed it to the intersection of
Fondren and Westpark. As the vehicles approached the intersection, the traffic light
turned red. Gosser, the driver of the pickup truck, ran the red light. Ortega followed
Gosser through the red light and to an apartment complex located at 5810 Fondren,
where he observed Gosser exit the truck and enter an apartment. Tomlinson lost sight
of Gosser and Ortega because a vehicle that stopped for the light hemmed him in
behind the light.   Ortega parked and followed Gosser on foot past the apartment. 
Ortega then circled back to his vehicle, whereupon he observed Gosser speaking with
the occupants of an apartment through an open door. Ortega used his cell phone to
inform the other members of the task force of Gosser’s location. Accompanied by
another individual, Gosser exited the apartment, re-entered his pickup truck, and
exited the apartment complex. 
          Tomlinson requested that a marked patrol unit stop Gosser for having run the
traffic light. HPD Officer Keene was in the vicinity of Westpark and Fondren and
heard the dispatcher relay Tomlinson’s request that a marked patrol unit stop Gosser’s
vehicle. Keene responded to the call, and arrived just as Gosser exited the apartment
complex. Keene turned his vehicle around, activated his emergency lights, and
stopped and arrested Gosser. 
          Tomlinson observed Keene stop Gosser, briefly speak with him, and place him
into the back of Keene’s patrol car. Gosser’s passenger did not possess a valid
driver’s license, and, thus, HPD policy required the officers to tow Gosser’s truck. 
Tomlinson and Keene therefore inventoried the contents of Gosser’s truck, and
Tomlinson discovered one kilogram of cocaine behind the passenger seat. 
Standard of Review
          When reviewing a trial court’s ruling on a motion to suppress, we apply the
bifurcated standard of review articulated in Guzman v. State, 955 S.W.2d 85 (Tex.
Crim. App. 1997). We give great deference to a trial court’s determination of
historical facts and review de novo the trial court’s application of the law of search
and seizure. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (citing
Guzman, 955 S.W.2d at 88-89). We defer to the trial court’s ruling on issues
involving credibility because the trial court is in a better position to evaluate the
credibility of the witnesses before it. Guzman, 955 S.W.2d at 87-89. If the trial court
is called upon to apply the law to the facts, and the ultimate resolution of the issue
does not turn on an evaluation of the credibility and demeanor of a witness, we
review that issue de novo. Id. at 89. When, as here, the trial court makes no express
findings of fact, we review the evidence in the light most favorable to the trial court’s
ruling and assume that the trial court made implicit findings of fact that support its
ruling, as long as those findings are supported by the record. Balentine v. State, 71
S.W.3d 763, 768 (Tex. Crim. App. 2002); Dominguez v. State, 125 S.W.3d 755, 762
(Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).
The Denial of the Motion to Suppress
          Gosser contends that his arrest violated the Fourth Amendment to the United
States Constitution, Article I, Section 9 of the Texas Constitution, Article 14.01 of
the Texas Code of Criminal Procedure, and Section 543.001 of the Texas
Transportation Code. Specifically, Gosser contends that his arrest was “illegal and
unconstitutional” because the undercover officer who witnessed him commit a traffic
offense did not arrest him immediately, and the arresting officer did not witness the
offense. Gosser further contends that his arrest “was unreasonable under the Texas
Constitution because police officers should not be authorized to conduct full custodial
arrests of Texas citizens based purely on trivial traffic offenses.”
Texas Constitutional Argument
          Gosser notes that our interpretation of Article I, Section 9 of the Texas
Constitution is independent of the interpretation of the Fourth Amendment to the
United States Constitution. See Hulit v. State, 982 S.W.2d 431, 437 (Tex. Crim. App.
1998); Heitman v. State, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991). He
acknowledges that, in Atwater v. City of Lago Vista, 532 U.S. 318, 121 S. Ct. 1536
(2001), the United States Supreme Court concluded that warrantless arrests for
misdemeanor traffic offenses were permissible under the Fourth Amendment, yet
urges that we interpret Article I, Section 9 of the Texas Constitution differently, to
extend “ more protection than the paltry protection afforded [by the Supreme Court’s]
decision in Atwater.”


 Gosser has provided no analysis or authority to support his
assertion that Article I, Section 9 of the Texas Constitution affords greater protection
than the Fourth Amendment to the United States Constitution. We therefore decline
to address whether Article I, Section 9 of the Texas Constitution affords greater
protection than the United States Constitution. See Heitman, 815 S.W.2d at 69091
n.23 (requiring that briefs asserting that the Texas Constitution provides rights in
addition to those provided in United States Constitution separate federal and state
issues and provide substantive analysis on each separate ground).
 

Validity of the Arrest
          Article 14.01(b) of the Code of Criminal Procedure provides that “[a] peace
officer may arrest an offender without a warrant for any offense committed in his
presence or within his view.” Tex. Code Crim. Proc. Ann. art 14.01(b) (Vernon
1977). Section 543.001 of the Texas Transportation Code provides that “[a]ny peace
officer may arrest without warrant a person found committing a violation of this
subtitle.”


 Tex. Transp. Code Ann. § 543.001 (Vernon 1999).
          Tomlinson and Ortega, two plainclothes task force members operating
unmarked police vehicles, located Gosser and observed him run the red light at the
intersection of Fondren and Westpark. Tomlinson followed behind Gosser and
observed him run the red light. Tomlinson elaborated, “[H]e was not in an
intersection when the light turned red. I expected him to stop.” They did not arrest
Gosser at that time, however, because both were in plainclothes. Tomlinson
explained that the Task Force is concerned with safety and that any “misconception
about who we are, [and] what we are doing” is eliminated if a marked unit, as
opposed to a plainclothes officer in an unmarked vehicle, attempts to stop a motorist. 
Tomlinson feared that motorists may run from or shoot at a plainclothes police officer
in an unmarked vehicle attempting to stop them. 
          Keene testified that he was the closest marked unit available to assist the task
force in stopping Gosser’s vehicle, but because he was not in the immediate area, it
took him “a couple of minutes” to arrive at Gosser’s location. Keene immediately
stopped Gosser upon locating him at the apartment complex. 
          The Texas Court of Criminal Appeals addressed contentions similar to
Gosser’s in Armendariz v. State, 123 S.W.3d 401 (Tex. Crim. App. 2003), and Astran
v. State, 799 S.W.2d 761 (Tex. Crim. App. 1990). In Armendariz, the Odessa Police
Department received a tip that Armendariz planned to transport a large amount of
cocaine from his residence to a convenience store. Armendariz, 123 S.W.3d at
40203. The Odessa Police Department and the Ector County Sheriff’s Department
conducted a joint undercover investigation. Id. at 403. An undercover officer
dressed in civilian clothes observed Armendariz commit a traffic offense and radioed
this information to uniformed police officers in marked patrol units. Id. The
uniformed officers stopped Armendariz’s vehicle, obtained his consent to search, and
seized two bundles of cocaine. Id. Armendariz moved to suppress the cocaine,
contending that the cocaine was the fruit of an unreasonable search and seizure. Id. 
The Texas Court of Criminal Appeals rejected this argument. Id. at 403. The Court
concluded that, if an undercover officer observes a traffic offense and radios this
information to uniformed officers, the uniformed officers have probable cause to stop
the vehicle. Id. at 404. As police conducted the search subsequent to a legitimate
traffic stop, and because Armendariz consented to the search, the search was
reasonable under the Fourth Amendment. Id. 
          Under these facts, we hold that the trial court reasonably could have concluded
that the delay between the time that Gosser committed the traffic violation and the
time of his arrest was not unreasonable and that Gosser’s arrest did not violate the
Fourth Amendment of the United States Constitution. The record supports an implied
holding by the trial court that the police conducted the search in this case in order to
inventory the contents of Gosser’s vehicle subsequent to a legitimate arrest for a traffic
violation and that the search was reasonable under the Fourth Amendment. Atwater,
532 U.S. at 354, 121 S. Ct. at 1557(holding an arrest for minor traffic offense
permissible under Fourth Amendment); Colorado v. Bertine, 479 U.S. 367, 371, 107
S. Ct. 738, 741 (1987) (stating that inventories are “well defined” exceptions to
warrant requirement of Fourth Amendment). 
          Moreover, Gosser’s arrest did not violate Article 14.01 of the Code of Criminal
Procedure. Both Tomlinson and Ortega witnessed Gosser run the red light at the
intersection of Fondren and Westpark, thereby providing Officer Keene with probable
cause to stop and to arrest him. See Armendariz, 123 S.W.3d at 404; Astran, 799
S.W.2d at 764 (concluding that an officer may rely on others in determining that
probable cause exists and may in some instances rely on other officers in making the
actual arrest); State v. West, 20 S.W.3d 867, 871–72 (Tex. App.—Dallas 2000, pet.
ref’d) (holding that, if arrest is authorized by Section 543.001 of Transportation Code,
then objectively valid traffic stop not unlawful merely because officer had ulterior
motive for making it). Although neither Tomlinson nor Ortega arrested Gosser, they
witnessed the offense and actively participated in a combined effort to arrest Gosser. 
Both relayed Gosser’s location to the arresting officer, and both maintained contact
with one another and with the arresting officer. Tomlinson and Ortega were
participants in Gosser’s arrest, as if they had physically arrested him. See Astran, 799
S.W.2d at 764.
          We also conclude that Gosser’s arrest did not violate Section 543.001 of the
Texas Transportation Code. In Soileau v. State, 244 S.W.2d 224, 225 (Tex. Crim.
App. 1951), the Texas Court of Criminal Appeals concluded that, in enacting Section
543.001 of the Texas Transportation Code, the Legislature intended to expand the
authority of a peace officer to “arrest without a warrant when a violation of any
provision . . . is committed in the presence of a peace officer.” The Texas Court of
Criminal Appeals thus concluded that Section 543.001 of the Texas Transportation
Code is intended to expand a peace officer’s authority to conduct a warrantless arrest. 
 Id. We conclude, relying on Astran, that Gosser’s arrest likewise complied with
Section 543.001 of the Texas Transportation Code. See Astran, 799 S.W.2d at 764;
Soileau, 244 S.W.2d at 22526 (approving of warrantless arrest for running red light
and holding that concealed weapon located upon search incident to arrest was
admissible at trial).
Conclusion
          Neither the Fourth Amendment to the United States Constitution, Article 14.01
of the Code of Criminal Procedure, nor Section 543.001 of the Texas Transportation
Code requires that the same peace officer who witnesses an individual commit a traffic
offense actually make the arrest, but only that the officer who witnessed the offense
participate in the arrest by, for example, notifying other officers to make the arrest. 
The evidence, viewed in the light most favorable to the trial court’s ruling, reveals that
the trial court reasonably could have concluded that Tomlinson and Ortega witnessed
the offense and participated in Gosser’s arrest, and we thus hold that the trial court did
not err in determining that the arrest complies with the Fourth Amendment to the
United States Constitution, Article 14.01 of the Code of Criminal Procedure, and
Section 543.001 of the Texas Transportation Code. We therefore affirm the judgment
of the trial court. 
 
 
 
 
                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Taft, Jennings, and Bland.
Do not publish. Tex. R. App. P. 47.2(b).