

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1035-11

### THE STATE OF TEXAS

#### v.

### ALVARO MAZUCA, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

**JOHNSON, J., filed a dissenting opinion.**

### D I S S E N T I N G   O P I N I O N

Ignorance of the law is no defense. We have all heard that statement many times, usually in the context of a defendant who claims not to have known of the law he or she is charged with violating. If an average citizen cannot plead ignorance of the law, how are we to condone a law-enforcement officer, who is charged with knowing the law he or she enforces, using that excuse to justify a traffic stop that is blatantly improper? This Court decided in 1988 that the law requiring an automobile to display red light to the rear did not mean that all other colors of light are barred. *State v. Vicknair*, 751 S.W.2d 180 (Tex. Crim. App. 1988). Vicknair was stopped by a police officer

because a taillight lens was cracked, and the crack "permitted some white light to be emitted with red light." *Id.* at 187. After stopping Vicknair, police found five pounds of marijuana in his car. *Id.* On appeal, the court of appeals found that the cracked taillight did not violate the statute then in effect, Art. 6701d, § 111, which required that every motor vehicle must be equipped with at least two tail lamps that emit a red light plainly visible from 1000 feet to the rear. *Id.* at 190. The current statute, Tex. Transp. Code § 547.322(d) is substantially the same as the statute at issue in *Vicknair*. "A taillamp shall emit a red light plainly visible at a distance of 1,000 feet from the rear of the vehicle."

In its opinion, this Court quoted the court of appeals.

> There is no evidence whatsoever in this record that appellant's car failed to emit a red light plainly visible at a distance of 1000 feet to the rear, as required by § 111. On the contrary, the arresting officer testified that it did emit a red light visible to him at all times at an unstated distance to the rear. Since no one testified that appellant's car failed to emit a visible red light, there was no basis at all to justify the original detention.

*Id.* at 187.

> The officer further testified that he had been instructed at the Houston Police Academy, as well as by his supervisors in the police department, that if a tail light lens on a motor vehicle was 'cracked to the extent that you could observe white light coming through the rear' this constituted a violation of the traffic laws of this State. The court of appeals rejected the officer's "good faith" belief concerning the law governing stopping a motorist driving a motor vehicle having a "fractured" tail light lens: "This was a warrantless arrest. A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. Tex. Code Pro. Ann. art. 6701d, § 153 (Vernon 1977). However, what this officer testified he observed did not constitute an offense under § 111 of art. 6701d, and the officer's well-intentioned but mistaken belief that it did will not legitimate this search. *Scott v. U.S.,* 436 U.S. 128 (1978). 'Instead of motive or intent, the court must view the circumstances objectively to determine whether they support the justification.' *Nickerson v. State*, 645 S.W.2d 888, 890 (Tex.App.–Dallas 1983). If the circumstances do not support the justification claimed for an arrest or search, the evidence illegally seized must be suppressed. Tex. Code Crim. Pro. art. 38.23

(Vernon 1979)."

*Id.* at 187-88.

> The sole reason the officer gave for stopping appellant's vehicle was that he believed appellant had committed a tail light "infraction" of the traffic laws. Given what we have stated, we find and hold that the officer was not justified in stopping appellant's vehicle for that reason, nor did he have probable cause to stop appellant's vehicle. Also see and compare *Willett v. State*, 454 S.W.2d 398 (Tex.Cr.App.1970); *Hall v. State*, 488 S.W.2d 788 (Tex.Cr.App. 1973); *Pruitt v. State,* 389 S.W.2d 475 (Tex.Cr.App.1965). Furthermore, the inarticulate hunch, suspicion, or good faith of the arresting officer was not sufficient to constitute probable cause for arrest, search, or detention of appellant and his passengers. *Talbert v. State*, 489 S.W.2d 309 (Tex.Cr.App.1973). Contrast the above cases with such cases as *Praska v. State,* 557 S.W.2d 83, 87 (Tex.Cr.App.1977); *Drago v. State*, 557 S.W.2d 375, 377 (Tex.Cr.App.1977); and *Soileau v. State*, 156 Tex.Cr.R. 544, 244 S.W.2d 224, 226 (1970). The opinions in each of those cases clearly reveal that there was some evidence of an initial legitimate traffic stop. Such does not exist here.

> Because the evidence was seized as a result of an unlawful stop, it became inadmissible under Art. 38.23, *supra*.

*Id.* at 190.

At the time they stopped appellee, the officers in this case were assigned the duty of looking for traffic violations. One hopes that officers who are assigned to enforce traffic laws know what those laws require, but it appears that these officers were unaware that, for more than 20 years, it had been clear that "red light to the rear" did not require *only* red light to the rear. While the state argues that the judge couldn't tell whether the light was red because the pictures were taken in daylight, red light is red in both darkness and daylight.

The trial judge, however, does seem to understand the ruling in *Vicknair*. He saw color pictures of the taillights and ruled that they emitted red light. The state has provided us with only black-and-white photographs. The trial judge also found that the officer's testimony as to the condition of the taillights was not credible. We were not present at the hearing and therefore cannot

judge the officer's credibility for ourselves.  As the court of appeals stated,

> We afford almost total deference to a trial court's determination of historical facts that are supported by the record, particularly when such findings are based on an evaluation of witnesses' credibility and demeanor. . . . The trial judge is the sole and exclusive trier of fact at a hearing on a motion to suppress.  If the trial court has made fact findings, a reviewing court does not engage in its own factual review but decides only whether the trial court's fact findings are supported by the record. . . . [W]e share the same sentiment of "trepidation" some of our sister courts have expressed in concluding that an officer's discovery of an arrest warrant while conducting an illegal detention would provide sufficient attenuation to remove the taint from the finding of contraband.  We do not want to "encourage the seizure of suspects upon inadequate grounds while an investigation is conducted for the purpose of establishing probable cause or discovering the existence of arrest warrants."  For these reasons, we conclude the uncovering of Appellee's arrest warrants failed to provide sufficient attenuation so as to insulate the discovery of ecstasy from taint. . . . [T]he trial court did not err in granting Appellee's motion to suppress.

*State v. Mazuca*, No. 08-09-00102-CR, 2011 WL 1533419, at *2, *3, *7 (Tex. App.—El Paso, Apr. 20, 2011) (not designated for publication) (internal citation omitted).

I would hold that the court of appeals correctly recognized that, without the highly improper traffic stop, the officers could not have learned appellee's name, found active warrants, or searched him and recovered contraband, all fruits of the poisonous tree.  We, like the court of appeals, should "afford almost total deference to a trial court's determination of historical facts that are supported by the record, particularly when such findings are based on an evaluation of witnesses' credibility and demeanor" and affirm its suppression of the evidence that was obtained because of the improper traffic stop.  I respectfully dissent.

Filed: May 23, 2012
Publish