## M. W. LITTLEFIELD V. STATE.

No. 30,442. February 25, 1959.

*Legg & Saxe (Reagan H. Legg* of Counsel) Midland, for appellant.

*Leonard Howell,* County Attorney, Midland, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is negligent homicide in the second degree; the punishment, 3 years in jail.

The appellant was a repairman for a music machine company, went on a "change call," and did not return in time for supper; his wife went in search for him; when she found him he was seated in a beer establishment drinking a soft drink,

and she slapped the same from his hands. Without a word the appellant went to his pickup truck and drove away. He hit the back of an automobile at an adjacent place of business and, without stopping, proceeded approximately four miles to where the fatal accident occurred. Two young boys were instantly killed and the mother and father were seriously injured. The pickup ran into the side of the automobile in which the injured parties were riding. The appellant testified that he did not remember anything after he got in his pickup at the place where his wife had apprehended him.

Upon these undisputed facts, a three count information was filed.

Count one charged that the appellant was involved in an accident and failed to stop and give certain information (required by Article 6701d, Section 40, V.A. Civ. St.) but instead unlawfully fled from the scene of the accident and, during the course of such flight, collided with another motor vehicle, thus causing the death of the occupants thereof.

Count two charged the appellant with driving in excess of the lawful speed limit of 30 miles per hour and, while so speeding, collided with said motor vehicle.

Count three charged the appellant with failing to stop at a stop sign, and while in the performance of such unlawful act, collided with said motor vehicle.

By motion to quash, the appellant attacked count one; such motion was overruled, and the court in his charge told the jury that they might find the appellant guilty under one or all of said counts but authorized only one punishment to be assessed.

We here note that, even though appellant objected to the inclusion in the charge of the unlawful act charged in each separate count, he made no complaint that more than one such unlawful act was submitted.

The verdict found the appellant guilty of counts one, two and three.

We have concluded that we need not consider the action of the court in overruling the motion to quash because of the general rule that if the evidence supports the conviction under any count, then the verdict will support the judgment. Bruno

v. State, 163 Texas Cr. Rep. 540, 295 S.W. 2d 211; Adams v. State, 154 Texas Cr. Rep. 92, 221 S.W. 2d 264; and Parroccini v. State, 90 Texas Cr. Rep. 320, 234 S.W. 671.

We will now discuss the evidence under counts two and three. It was established that the collision occurred within a 30-mile per hour speed zone. Alvin Moelling testified that his house was one house from the intersection where the accident occurred, that he heard the roar of a motor and saw the pickup traveling at "about 60 miles an hour" as it approached the intersection, that the roar diminished some, and in his opinion the pickup was traveling at 45 miles per hour at the time it passed the stop sign, entered the intersection, and had the collision. John Grief testified that the pickup was traveling 60 miles per hour at the time of the collision. It was established that there was a stop sign at the intersection.

Appellant contends that the court erred in admitting the proof as to the prior accident. We cannot agree with appellant's contention that this constituted proof of an extraneous offense. There was evidence the appellant drove away from the scene of the first collision at a high rate of speed, that he ran a stop sign, and traveled some four miles to the point of the fatal impact. It is not necessary that we decide whether count one charges an offense in order to pass upon the admissibility of the evidence of the first collision. This was all one continuous transaction, and each fact was in such close juxtaposition to each other as to render them all admissible. McCoy v. State, 144 Texas Cr. Rep. 309, 162 S.W. 2d 976, and Sims v. State, 156 Texas Cr. Rep. 218, 240 S.W. 2d 297.

Appellant next contends that the court erred in admitting the evidence concerning the first collision because it was not conclusively established that such took place upon a public highway rather than on a private driveway. Such contention has been overruled in Salazar v. State, 145 Texas Cr. Rep. 478, 169 S.W. 2d 169, and Redding v. State, 166 Texas Cr. Rep. 517, 316 S.W. 2d 724.

He further contends that there was a variance between the allegation and the proof in that the information charged that the appellant was traveling 60 miles per hour in a 30-mile zone, while Mr. Moelling's testimony, as set forth above, shows that the appellant had reduced his speed to 45 miles per hour prior to the moment of the impact. Attention is directed to Vannoy v. State, 142 Texas Cr. Rep. 543, 155 S.W. 2d 368, where we held

that a reduction of speed immediately prior to the impact would not relieve the accused of the consequences of having violated the speed law.

In this connection, appellant claims that the court erred in admitting the opinion of John Grief, a seventh grade school boy who lived near the intersection, that the pickup was traveling 60 miles per hour or "a little over." We have concluded that in this mechanized age almost any witness may express an opinion as to speed of an automobile. Parroccini v. State, supra.

We have concluded that the above evidence was sufficient to authorize the jury to find the appellant guilty under count two.

As to count three, the appellant contends that the evidence is insufficient to support the finding that the stop sign was "a duly and legally authorized and existing traffic control sign" as alleged in the information. While the proof leaves much to be desired in this respect, we do find that Lt. Merket of the traffic division of the Midland police department was asked and answered the following question:

"Q. Is that a duly and legally (sic) traffic sign of the city of Midland? A. Yes, it was installed June 27, 1955."

In the absence of an issue being made concerning such fact, we hold that this was sufficient evidence to establish that the sign had been erected by the constituted authorities of the city of Midland and not by some private individual as mentioned in Cox v. State, 154 Texas Cr. Rep. 404, 227 S.W. 2d 556. We hold the evidence sufficient to support the conviction under count three.

Appellant's employer, testifying in his behalf, though not a witness to the collision, stated, without objection, that prior to this fatal accident the appellant had had two or three automobile accidents. He was then asked if he knew whether or not the appellant had received notice that his driving privileges were in jeopardy. He answered that he had no such knowledge. Appellant relies, among other cases, upon Ward v. State, 160 Texas Cr. Rep. 232, 268 S.W. 2d 465, and contends that the asking of the last question constituted proof of an extraneous offense. With this we do not agree. There is an entire absence of any showing that the question was asked in bad faith. The question in Ward implied the commission of another offense, while the

question here might have been based upon the two or three accidents about which the witness had answered without objection.

Appellant's last complaint arose out of the court's action in permitting the state to reopen its case and ask the appellant if he had ever before been convicted of a felony. Recently, in Martin v. State, 160 Texas Cr. Rep. 364, 271 S.W. 2d 279, we quoted Article 643, V.A.C.C.P., and held it not error to permit the state to reopen its case even after the charge has been presented to the accused.

Finding no reversible error, the judgment of the trial court is affirmed.

DAVIDSON, Judge (dissenting).

This appellant was convicted of killing two persons at one and the same time by the same act and with one volition, which was the negligent operation of a motor vehicle upon a public highway of this state.

The conviction was upon an information containing three counts, each count charging that the death of the two persons was brought about by the appellant's negligence while engaged in the commission of three separate unlawful acts.

The jury found appellant guilty under each of the counts and so specified in its verdict and assessed a punishment which could be applied under either count or all counts.

When one unlawfully causes or brings about the death of one person, whether by murder or negligent homicide, the offense is complete.

Over forty years ago, this court in Spannell v. State, 83 Texas Cr. Rep. 418, 203 S.W. 357, announced the rule of law to be that where two persons are killed as a result of a single shot or a single act and with one and the same volition a conviction could only be had for the killing of one of those persons.

In Ozuna v. State, 166 Texas Cr. Rep. 565, 316 S.W. 2d 738, a homicide case where, as here, more than one person was killed as a result of the same act and volition, I called attention, in a dissenting opinion, to the rule set out in the Spannell case and insisted that a conviction for homicide could not lawfully

be predicated upon or could the accused be prosecuted for and convicted of killing more than one of the deceased persons.

In the Ozuna case my brethren did not discuss the Spannell case nor was any attempt made in the opinion to differentiate between the two or to show that the rule announced by the Spannell case was not applicable or controlling.

Without expressly overruling and destroying the rule in the Spannell case, my brethren must be cast in the position of having overruled that case by affirming the conviction in the Ozuna case, where the accused was tried and convicted of killing five persons by the same act and with the same volition.

About six months after the rendition of the opinion in the Ozuna case, the Supreme Court of the United States, on December 15, 1958, in the case of Ladner v. United States, 3 L.Ed. 2d 199, 79 Sup. Ct. 209, announced the rule of law to be the same as this court had held in the Spannell case.

In the Ladner case, the accused was convicted in separate cases of assaulting two federal officers by shooting them with a shotgun. Punishment was assessed for the assault upon each officer and the punishments so assessed were made to run cumulative. When Ladner had served the first sentence for the assault upon one of the officers he sought to be relieved of the other, insisting that he was guilty of but one assault and subject to only one punishment, which he had satisfied.

There appears to have been no challenge of the fact that Ladner "fired a single discharge from a shotgun into the front seat of an automobile and that the pellets wounded the two federal officers * * *."

Both the United States district court, where the case arose and the circuit court of appeals held "that the wounding of the two federal officers from the single discharge of a shotgun would constitute a separate offense against each officer, under the statute."

Such a holding under the laws of this state would be in direct contravention of the holding of this court in Spannell v. State, supra, and would sustain the holding of the majority of this court in the Ozuna case and in the instant case.

The Supreme Court of the United States reversed the Ladner case, however, saying:

"We thus hold that the single discharge of a shotgun alleged by the petitioner in this case would constitute only a single violation of Sec. 254."

The "Sec. 254," there referred to, makes it unlawful for one to assault a federal officer engaged in the performance of his official duties.

Thus the Supreme Court of the United States arrived at the same conclusion as did this court over forty years ago in the Spannell case, the conclusion being that where more than one person is killed or assaulted as a result of a single shot fired with one volition the state is restricted to a prosecution for the unlawful killing of or assault upon one person. That holding also supports my dissent in the Ozuna case.

The rule of law announced has direct application in the instant case, for, here, we have two people killed as a result of a single act on the part of the appellant—which was the driving and operation of the automobile upon a public highway, the volition being the negligent operation of that automobile.

Thus the state should have been restricted to prosecuting the appellant for the killing of only one of those persons; it should not have been permitted to prosecute, either jointly or severally, for, and pursue to final conviction, the killing of both persons.

I have never entertained any doubt as to the correctness of the Spannell case. The Supreme Court of the United States, having reached the same legal conclusion in the Ladner case, confirms me in that opinion.

This court ought also to follow those cases and the rule of law announced thereby, or else expressly overrule the Spannell case.

The foregoing is not the only error in this case:

Here, the information contained three counts. Each count charged that the death of the two persons was brought about by the negligence of the appellant while in the performance of three separate unlawful acts.

The jury found appellant guilty under each count and fixed a penalty which could have been inflicted under any one or all of such counts. There is nothing to indicate that a part of the punishment inflicted was not under each count.

So the state has prosecuted and convicted this appellant of the killing of the same two persons at the same time but by three different acts, and the jury has punished for each act. In other words, when my brethren affirm this conviction they say and announce as a sound principle of law that in a murder case the state may in one count of the indictment charge that the accused killed the deceased by shooting him with a gun; in another count the state could charge that the accused killed the same person by cutting him with a knife; and in a third count the state could charge that the accused killed that person by beating him with a stick.

Upon a trial under such an indictment, the accused could be lawfully convicted three times of the same offense and assessed punishment under each conviction.

So the state is now no longer restricted to prosecuting one for the offense he commits; it may now prosecute one for the same offense as often as it chooses, so long as different methods in committing that offense are shown.

To me, such is indeed a strange doctrine. But my brethren say that such is the law.

I can only dissent.